Terrence J. Coleman   (State Bar No. 172183)
Azin Jalali            (State Bar No. 277326)
PILLSBURY & COLEMAN, LLP
100 Green Street
San Francisco, California 94111
Telephone:  (415) 433-8000
Facsimile:   (415) 433-4816
Email: tcoleman@pillsburycoleman.com
       ajalali@pillsburycoleman.com

Attorneys for Plaintiff,
TERESA A. GLEASON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TERESA A. GLEASON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNUM GROUP; UNUM LIFE INSURANCE COMPANY OF AMERICA; and DOES 1-20, inclusive,<br><br>　　　　Defendants. | Case No. 3:21-cv-02776-AGT<br><br>**FIRST AMENDED COMPLAINT FOR RECOVERY OF EMPLOYEE BENEFITS; EQUITABLE RELIEF**<br><br><br><br><br><br>Complaint Filed:  March 4, 2021 |

Plaintiff alleges on information and belief as follows:

**JURISDICTION AND VENUE**

1.　　This Court has jurisdiction pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"), over which this Court possesses original jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

2.　　Venue is proper in this District because Defendants are authorized to transact business in the State of California, administered benefits in this District, and may be found in this District, and the acts complained of occurred in this District. 29 U.S.C. § 1132(e)(2).

# THE PARTIES

3. Plaintiff Teresa A. Gleason ("Plaintiff") is an individual who is currently, and at all relevant times was, residing in the State of California.

4. Defendants UNUM GROUP ("UNUM GROUP") and UNUM LIFE INSURANCE COMPANY OF AMERICA ("UNUM LIFE") were and are business entities authorized to transact business in the State of California, including the marketing, sale and issuance of disability insurance. Defendants UNUM GROUP and UNUM LIFE are collectively referred to hereafter as "UNUM."

5. UNUM LIFE is now wholly controlled and operated by UNUM GROUP and has no employees with the responsibility of handling, processing or adjudicating disability insurance claims. The UNUM Defendants, in concert and as joint venturers, handled and processed Plaintiff's claim for benefits as described below. UNUM GROUP is further the alter ego of UNUM LIFE. UNUM GROUP controlled, directed and/or supervised the activities of UNUM LIFE. In the case of *Chapman v. UnumProvident Corporation, et al.,* Marin County Superior Court, Case No. CV012323, a jury unanimously found UNUM GROUP (then called UnumProvident) to be the alter ego of similarly structured UNUM GROUP subsidiaries, The Paul Revere Life Insurance Company and Provident Life & Accident Insurance Company, which issue was fully litigated on the merits and is now final such that the UNUM Defendants are now collaterally estopped from contesting the issue herein.

6. Defendant UNUM GROUP owns and/or operates a number of insurance companies, including Defendant UNUM LIFE. None of the insurance companies employ their own employees. Instead, the claims processes of all the insurance companies are consolidated into a claims operation which is operated entirely by UNUM GROUP and by employees, all of whom are employed by UNUM GROUP.

7. Claims employees and physicians are employed by UNUM GROUP and are used among all insurers which are part of the UNUM GROUP empire and are owned either directly or indirectly by UNUM GROUP. Said physicians and employees are used to process claims for all such insurers without distinction, and the methods employed to handle claims among all insurers are coordinated by high-level claims personnel and employed throughout the claims of all insurers under the UNUM GROUP umbrella.

8. Correspondence regarding claims in general, and in connection with Plaintiff's claim, contains the letterhead of UNUM GROUP.

9. The methods and claims procedures, employees, and consulting physicians are used in the same manner throughout the entire UNUM GROUP claims process without any material differences between insurers and are all supervised by the same high-level UNUM GROUP claims personnel.

10. Statistics are maintained and provided to high-level UNUM GROUP claims personnel for all of the insurers within the UNUM GROUP empire, compared with each other and used to increase the profitability of the claims operation of each insurer at the expense of legitimate claims. Further, UNUM GROUP distributes monthly targets to its claims personnel setting forth the amount of claim closures that they are expected to achieve and conditions the amount of bonus/incentive pay that they receive on whether such targets are consistently met. Such targets were distributed to the individuals responsible for terminating Plaintiff's claim for benefits.

11. The California Department of Insurance ("DOI") conducted an examination of the UNUM Defendants' policies and procedures, and concluded that the UNUM Defendants' practices and procedures constituted unfair business practices and that they operated their claims department in a manner wherein they sought to find reasons to justify a denial of a claim rather than conduct a full, fair and thorough investigation of a claim. On or about October 1, 2005, UNUM GROUP and the DOI entered into a series of identical agreements with various UNUM GROUP insurers, identified as the California Settlement Agreement ("CSA"). These agreements were approved, authorized and ratified by UNUM GROUP and each of its participating insurers. In the CSA, UNUM GROUP and the companies within its empire agreed to change specific practices which they knew to be unfair, harmful to insureds and violative of their insureds' rights, but which had been employed by UNUM GROUP and its companies to support the denial of legitimate claims.

12. It was the responsibility of UNUM GROUP and its claims personnel to implement the changes agreed to under the CSA within and throughout UNUM GROUP and the insurers within its empire, including UNUM LIFE.

13. UNUM GROUP and its insurers paid lip service to these changes, but in reality have

refused to make all of the changes that they agreed to make and have continued to deliberately operate their claims department in a manner intended to create a basis to deny disability claims and to increase their profits at the expense of insureds by continuing to deny their legitimate claims. Many of the practices which UNUM GROUP and its insurers agreed not to employ were, in fact, employed to deny Plaintiff's claim.

14. Plaintiff is ignorant of the true names and capacities of the Defendants named herein as Does 1 through 20, inclusive, and therefore sues these Defendants by said fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when they have been ascertained.

15. At all material times herein, each Defendant was acting as individuals or as the agents and employees of the remaining Defendants and in doing the things hereinafter alleged was acting either individually or within the course and scope of said agency and with the permission and consent of its principal. The acts and conduct alleged herein of each said Defendant were known to, authorized by, and/or ratified by the other Defendants.

## FACTUAL ALLEGATIONS

16. In 1988, Plaintiff graduated from law school and commenced a 30-plus year career with the firm of Baker & McKenzie, LLC ("Baker McKenzie"), first as an associate attorney from 1988 to 1996, then as National Partner from 1996 to 1998, and finally as Principal (equity partner), beginning in 1998.

17. Baker McKenzie is one of the world's largest law firms, with offices in nearly every major city worldwide and lawyers who specialize in a wide array of practice areas. Plaintiff's area of specialty was international trade. She advised clients on a wide range of customs and import regulatory issues impacting the global movement of goods. For more than 15 years, Plaintiff was Chair of Baker McKenzie's Global Customs Practice. Plaintiff, and the attorneys working under her supervision and direction, assisted U.S. and foreign clients in all aspects of U.S. Customs law, including the classification and valuation of goods, compliance audits, compliance with NAFTA and other free trade agreements, and defending penalty and other enforcement actions. In 1996, Plaintiff was elevated to the position of National Partner, and in 1998, she became a Principal (equity partner) of Baker McKenzie.

18. In or about 2000, UNUM issued a group disability insurance policy, Policy No. 204707 005 (hereafter, the "Policy"), covering the Principals of Baker McKenzie, including Plaintiff. The Policy was part of an overall employee welfare benefit plan established or maintained by Baker McKenzie.

19. At all material times hereto, Plaintiff was insured under the Policy and Plan, which obligates UNUM to pay and provide monthly disability benefits in the event of a covered disability.

20. The Policy purports to define "disability" and "disabled" to mean that, because of sickness or injury, "you are unable to perform all of the material and substantial duties of your regular occupation; or [¶] you are recording less than 80% of your average billable and non-billable hours."

21. The Policy provides for payment of up to $35,000 per month for disability to age 65.

22. At all material times herein, Plaintiff complied with all the material provisions pertaining to the Policy. At all material times herein, the Policy was in full force and effect.

23. While said Policy was in full force and effect, Plaintiff became disabled from her own regular occupation as a senior partner and international trade attorney due to lung cancer. Plaintiff underwent two surgeries, consisting of a wedge resection and lobectomy, followed by administration of chemotherapy infusions.

24. Plaintiff provided timely notice of disability and claim to UNUM and submitted completed claim forms for benefits. Plaintiff provided overwhelming and convincing proof of her disability and inability to continue working in her demanding own occupation, including certifications from Plaintiff's treating physicians fully supporting Plaintiff's disability.

25. UNUM accepted Plaintiff's disability and approved payment of Plaintiff's monthly disability benefit. By letter dated April 19, 2018, UNUM advised that it had determined the date of disability began on December 5, 2017, and that Plaintiff was entitled to payment of monthly benefits of $35,000 as of March 5, 2018 (following the Policy's 90-day elimination period during which benefits do not accrue). UNUM explained that, "We approved your benefits because you are unable to work due to your medical condition of lung cancer."

26. By letter dated September 6, 2018, UNUM unreasonably and wrongfully terminated benefits for the first time, claiming that Plaintiff's oncologist had supposedly released her to return to

1   work.  UNUM knew, however, that Plaintiff's occupation required impeccable cognitive functioning;
2   that Plaintiff had undergone an extended course of chemotherapy that included the toxin Cisplatin,
3   which it knew commonly causes long-term mental changes, including impaired concentration, impaired
4   recall or attention to details, impaired ability to multi-task, impaired processing speeds, and impaired
5   ability to learn and apply new information; and that Plaintiff complained of cognitive slowing which
6   would prevent a return to work.

7       27.   On or about October 26, 2018, Plaintiff submitted to UNUM a treatment record from her
8   treating oncologist certifying that Plaintiff was "unable to return back to work as her job of lawyer"
9   because of "severe memory problems since the chemo, difficulty focusing, difficulty with basic math
10  skills, difficulty remembering basic facts."  UNUM, however, refused to immediately reinstate benefits,
11  insisting that Plaintiff submit neurocognitive testing in order to substantiate her cognitive impairment.

12      28.   On December 26, 2018, Plaintiff submitted to UNUM comprehensive cognitive testing
13  performed by clinical neuropsychologist Ariati S. Rakic, Ph.D.  Dr. Rakic's testing confirmed
14  significant cognitive deficits precluding Plaintiff from returning to work in her prior occupation as a
15  senior partner and international trade specialist.  Dr. Rakic summarized for UNUM:  "the deficits
16  currently affecting her attention, working memory, integration, organization, planning, new learning,
17  retrieval, reading, listening comprehension and expressive language are believed to represent a sizeable
18  liability if she were to continue to function in that role."

19      29.   UNUM reviewed Dr. Rakic's testing and agreed that the testing confirmed the existence
20  of cognitive deficits precluding Plaintiff from returning to work in her prior demanding occupation.  An
21  in-house doctor at UNUM, Jana Zimmerman, Ph.D., concluded that the testing documented cognitive
22  inefficiencies that "would be a limiting factor in RTW [return to work] in her own occ."  Another in-
23  house doctor, Cynthia Brown, M.D., concluded that "[t]he sum of the evidence in the file supports
24  cognitive dysfunction following chemotherapy."

25      30.   UNUM accordingly reinstated benefits.
26      31.   On March 21, 2020, Dr. Rakic reported the results of repeat cognitive testing to UNUM,
27  which confirmed continued cognitive deficits with respect to attention, auditory processing, retrieval of
28  information, memory, reading comprehension and mental endurance.  Dr. Rakic summarized:  "This

cluster of deficits is proffered to represent cognitive sequelae that continue to impede Ms. Gleason's ability to exercise her function as a competent attorney. In other words, it is still this Examiner's opinion that the onset of cognitive changes that occurred in response to chemotherapy failed to subside following the discontinuation of treatment three [years] ago and the deficits continue to result in significant liabilities that would render employment unviable to this patient at this time."

32. On May 28, 2020, however, UNUM unreasonably and wrongfully terminated benefits again. It claimed that the records "no longer" supported impairment. UNUM knew this was false. Dr. Rakic's testing did not document cognitive improvement. UNUM nonetheless had a different in-house reviewer, Edan Critchfield, Psy.D., review Dr. Rakic's testing, who claimed that Dr. Rakic's testing from November 2018 and March 2020 was all within normal expectation and would not result in functional impairment. UNUM knew that this conclusion was bogus, as its own medical reviewers had previously concluded that the same testing documented cognitive dysfunction that would preclude a successful return to work. Nonetheless, on the basis of Dr. Critchfield's bogus review, UNUM terminated benefits.

33. At the beginning of the month of May 2020, the individuals responsible for making and/or approving the termination of Plaintiff's claim for benefits had been provided targets for the number of claims that they were expected to terminate by the end of the month. The wrongful termination of Plaintiff's claim was the direct result of the pressure that UNUM imposed on them to meet the denial target.

34. By letter dated November 25, 2020 through counsel, Plaintiff appealed to reverse UNUM's termination of benefits and to reinstate benefits, providing additional and overwhelming evidence establishing Plaintiff's ongoing disability, including an additional report from Dr. Rakic certifying Plaintiff's continued disability, peer-reviewed articles outlining the known complications from the chemotherapy drug Cisplatin, under-oath statements from Plaintiff, her son and a colleague further corroborating Plaintiff's continued impairment, and internal documents from UNUM and related deposition testimony of former senior executives at the Company documenting UNUM's pattern and practice of targeting known legitimate claims like Plaintiff's for denial in order to boost profits.

35. Without conducting a meaningful review or a good faith investigation or evaluation of the information Plaintiff submitted, by letter dated January 14, 2021, UNUM refused to reinstate benefits.

36. As a result of the actions of Defendants, and each of them, Plaintiff has been denied disability benefits under the Policy to which she is entitled.

37. As a further result of the actions of Defendants, and each of them, Plaintiff has been forced to engage the services of legal counsel for the purpose of obtaining her insurance benefits, has suffered severe emotional distress, and has suffered other consequential loss.

**FIRST CAUSE OF ACTION**

**Recovery of Employee Benefits**
**(Against all Defendants; 29 U.S.C. § 1132(a)(1)(B))**

38. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39. At all material times herein, Defendants, and each of them, issued disability insurance to Plaintiff as aforesaid.

40. At all material times herein, Plaintiff was insured under the Policy and Plan and Defendants were responsible for the administration and handling of Plaintiff's benefits.

41. Plaintiff has complied with all material conditions required under the terms of the Policy and Plan.

42. Plaintiff is disabled from her regular occupation and Plaintiff is entitled to benefits under the aforementioned Policy. Defendants, and each of them, are estopped from asserting and have waived all contractual provisions, if any, purporting to limit their obligations to provide disability benefits.

43. Contrary to the evidence and arguments presented to it, UNUM terminated Plaintiff's claim for benefits and has refused and continues to refuse to make full disability payments to Plaintiff in the appropriate amount due. Plaintiff appealed UNUM's most recent denial of benefits and exhausted her administrative remedies. The appeal was denied by UNUM on January 14, 2021.

44. Defendants' refusal to reinstate Plaintiff's benefits violates the terms of the Policy and applicable ERISA regulations, and Defendants' actions are wrongful, arbitrary and capricious. At all

material times herein, Defendants, and each of them, failed and refused to honor the Policy. Defendants are therefore liable for all benefits due under the Policy, which have been improperly terminated.

45. As a proximate result of Defendants' actions, Plaintiff has been damaged as set forth in Paragraphs 36-37 above.

## SECOND CAUSE OF ACTION

### Equitable Relief
### (Against all Defendants; 29 U.S.C. §1132(a)(3))

46. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47. At all material times herein, Defendants, and each of them, were fiduciaries with respect to their exercise of authority over the management of the Policy, disposition of Plan assets, and administration of the Policy.

48. Plaintiff asserts against UNUM a breach of fiduciary duty claim, both as an individual Plan participant and on behalf of all the other participants and beneficiaries of the Policy and Plan.

49. Plaintiff asserts that a claim for benefits due under the Policy does not provide her with an adequate remedy at law in light of UNUM's continuing course of conduct in violating the terms of the Policy and applicable law as described below.

50. Defendants, and each of them, were obliged to discharge their duties solely in the interests of beneficiaries and participants for the exclusive purpose of providing beneficiaries and participants with all benefits due, defraying reasonable expenses of the Plan and using all prudent skill and diligence in accordance with the documents and instruments governing the Plan.

51. At all material times herein, Defendants, and each of them, violated these duties by, *inter alia,* the following:

A. Consciously and unreasonably failing to investigate or evaluate Plaintiff's claim fairly or in good faith, but, on the other hand, utilizing the information available to them in a manner calculated to provide them with a wrongful but plausible sounding justification to deny benefits;

B. Consciously and unreasonably setting out to create a plausible sounding basis upon which to deny Plaintiff's claim and seeking to obtain information calculated to permit them to

claim that they had a plausible sounding basis upon which to deny Plaintiff's benefits;

        C.      Consciously and unreasonably failing to thoroughly and fairly investigate all information reasonably available to them;

        D.      Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiff's claim for benefits and consciously and unreasonably failing to investigate all bases to support coverage;

        E.      Consciously and unreasonably delaying, refusing, and continuing to refuse to pay Plaintiff benefits properly payable under the Policy and continuing to deprive Plaintiff of her rightful benefits with the knowledge that said delays and denials were and are wrongful and contrary to their obligations under their Policy and the law;

        F.      Consciously and unreasonably failing to investigate Plaintiff's claim fairly and in good faith and refusing to give Plaintiff's interests at least as much consideration as they gave their own;

        G.      Consciously and unreasonably failing to adopt and implement reasonable or proper standards applicable to the prompt and fair investigation of the processing of Plaintiff's claim under the Policy;

        H.      Consciously and unreasonably failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim even though liability therefor was and is reasonably clear;

        I.      Consciously and unreasonably refusing to pay Plaintiff's claim with the knowledge that Plaintiff's claim is payable and with the intent of saving them money at Plaintiff's expense;

        J.      Consciously and unreasonably interpreting information available to them in such a way as would justify termination of benefits even though Defendants knew that such interpretation was contrary to the facts and was wrongful; and

        K.      Consciously and unreasonably failing to comply with the terms and provisions of the California Settlement Agreement in order to continue a pattern and practice of improper claims handling tactics.

52. Plaintiff further requests judgment permanently enjoining Defendants from ever again serving as a fiduciary with respect to the Plan or Policy, together with attorneys' fees and costs. In addition, Plaintiff seeks appropriate equitable relief from the Defendants, and each of them, including an order by this Court that the full amount of benefits due be paid with interest on all retroactive payments due and owing, disgorgement of profits, make-whole relief, that Defendants be enjoined from terminating benefits for the duration of the applicable maximum benefit period under the Plan or Policy, that Defendants be enjoined from communicating and/or disseminating claim closure targets and expectations to any individuals responsible for the handling or adjudication of claims, and that Plaintiff be placed in the position that she would have been in had she been paid the full amount of benefits to which she is entitled, including, without limitation, interest, attorneys' fees and other losses resulting from Defendants' breach.

WHEREFORE, Plaintiff prays as follows:

1. For a determination that Plaintiff is entitled to receive benefits under the Policy and an injunction mandating the payment of benefits to Plaintiff for the maximum benefit period under the Policy;

2. For attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g);

3. For prejudgment interest on all LTD benefits that have accrued prior to the judgment;

4. For equitable and injunctive relief as set forth above, including disgorgement of profits and appropriate make-whole relief; and

5. For such other and further relief as the Court may find appropriate.

Dated: September 24, 2021                                PILLSBURY & COLEMAN, LLP


By: /s/ Terrence J. Coleman
    Terrence J. Coleman
    Azin Jalali
    Attorneys for Plaintiff,
    TERESA A. GLEASON

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of September, 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of California, San Francisco Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By: /s/ Terrence J. Coleman
Terrence J. Coleman
Attorney for Plaintiff